1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT
10      EASTERN DISTRICT OF WASHINGTON
11

12  TIMOTHY DOTEN,                     No. 1:15-CV-03059-JTR

13          Plaintiff,                 ORDER GRANTING PLAINTIFF'S
14                                     MOTION FOR SUMMARY
            v.                         JUDGMENT
15

16  CAROLYN W. COLVIN,
17  Commissioner of Social Security,

18          Defendant.
19

20      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

21  No. 21, 22.  Attorney D. James Tree represents Timothy Allen Doten (Plaintiff);

22  Special Assistant United States Attorney Richard M. Rodriguez represents the

23  Commissioner of Social Security (Defendant).  The parties have consented to

24  proceed before a magistrate judge.  ECF No. 9.  After reviewing the administrative

25  record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's

26  Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

27  Judgment; and **REMANDS** the matter to the Commissioner for additional

28  proceedings pursuant to 42 U.S.C. § 405(g).


ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 3, 2011, alleging disability since July 31, 2009, due to hearing disabilities, bilateral hand deformities, bilateral feet deformities, speech impediment, asthma, small chest cavity, hard and soft cleft palate, hernias in the groin area, lazy left eye, Pierre Robin Syndrome, left shoulder pain, and his spinal cord being too small for his body. Tr. 201-215, 249. The applications were denied initially and upon reconsideration. Tr. 141-144, 148-151. Administrative Law Judge (ALJ) Larry Kennedy held a hearing on October 30, 2013, at which Plaintiff, represented by a non-attorney representative, and vocational expert, Kimberly Mullinax, testified. Tr. 36-86. The ALJ issued an unfavorable decision on November 8, 2013. Tr. 13-29. The Appeals Council denied review on March 6, 2015. Tr. 1-7. The ALJ's November 8, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 24, 2015. ECF No. 1, 6.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 29 years old at the alleged date of onset. Tr. 201. Plaintiff completed the twelfth grade in 1998. Tr. 250. Plaintiff's work history included janitorial work, fast food work, cashiering, and general labor. Tr. 260-265, 279-290. Plaintiff reported he stopped working on September 27, 2011, because of his conditions. Tr. 249-250.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On November 8, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 31, 2009, the alleged date of onset.  Tr. 15-16.

At step two, the ALJ determined Plaintiff had the following severe impairments:  lumbar spine degenerative disc disease; spina bifida occulta; hearing loss; Pierre Robin syndrome; obesity; major depressive disorder; bipolar disorder; obstructive sleep apnea; asthma; hernia; and gouty arthritis.  Tr. 16-20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 20-21.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> He can lift up to 20 pounds occasionally, lift and/or carry up to 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour day with normal breaks; sit about 6 hours in an 8-hour day with normal breaks; occasionally balance, stoop, kneel, and crouch; never climb ladders, ropes, scaffolds, ramps or stairs; and never crawl. He should avoid concentrated exposure to vibration and moderate exposure to hazards. He can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. He would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and

absence. He needs a work environment with minimal supervisor contact. (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor.) He can work in proximity to a few co-workers but not in a cooperative or team effort. He needs a work environment that requires minimal interactions with a few co-workers. He needs a work environment that is predictable and with few work setting changes. He would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded. He can work in a very quiet to moderate noise intensity level as those terms are defined in the Selected Characteristics of Occupations (SCO) in the Revised Dictionary of Occupational Titles. He may wear a protective hearing device in a work environment that involves loud or very loud noise intensity levels. He would not be required to answer telephones or use headsets, radios or other 2-way communication devices. He can communicate with others such as coworkers, supervisors and the public but not in jobs where communications are required under stressful or emergency situations or in a work environment that involves loud or very loud noise intensity levels. No immediate verbal response is required unless clarification of instructions or orders is needed.

Tr. 21-22. The ALJ found Plaintiff's past relevant work to include cashier II, fast food cook, agricultural produce sorter, janitor, cook helper, and labeling machine operator. Tr. 27. The ALJ concluded that Plaintiff was not able to perform his past relevant work. *Id.*

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cleaner housekeeper, hand packager, parking lot attendant, document preparer, and assembler. Tr. 28. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 31, 2009, through the

date of the ALJ's decision, November 8, 2013.  *Id.*

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly assess whether Plaintiff met or equaled Listing 2.10; (2) failing to accurately limit Plaintiff's residual functional capacity to a quiet work environment; (3) failing to properly weigh medical source opinions; (4) failing to allow Plaintiff's representative to complete his cross examination of the vocational expert at the hearing; and (5) failing to properly consider Plaintiff's credibility.

## DISCUSSION

### A.   Listing 2.10

Plaintiff challenges the ALJ's step three determination that Plaintiff did not meet or equal Listing 2.10.  ECF No. 21 at 12-16.

Conditions contained in the "Listing of Impairments" are considered so severe that they are irrefutably presumed disabling without any specific finding as to a claimant's ability to perform his past relevant work or any other jobs.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant is conclusively disabled if his condition either meets or equals a listed impairment.  *Id.*  A claimant must show more than a mere diagnosis of a listed impairment; he must show that he has a "medically determinable" impairment or impairments that satisfy all of the criteria in the applicable listing.  20 C.F.R. §§ 404.1525(d); 416.925(d); *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985).

Listing 2.10, titled "Hearing loss not treated with cochlear implantation," is met by showing the following:

> A.   An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

OR

B.  A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The Ninth Circuit has held that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  A mere statement that a claimant does not equal the listing is insufficient.  *See Id*.

Here, the ALJ's analysis of Listing 2.10 was limited, stating Plaintiff's "hearing impairment is evaluated under listing 2.10.  His degree of hearing loss prevented evaluation of bone conduction.  In the better ear, he has a speech receptor threshold of 80 decibels.  I note that the claimant has been provided with a digital hearing device."  Tr. 20.

The record contains one hearing test in the relevant time period, dated January 19, 2010.  Tr. 357-358.  This testing revealed air conduction in the right ear at 110 dB at 500 Hz and >110 dB at 1000 Hz and 2000 Hz.  Tr. 357.  This places the air conduction average in the right ear greater than 90 dB.[1]  The air conduction in the left ear was between 100 dB and 110 dB at 500 Hz, 90 dB at 1000 Hz, and between 80 dB and 90 dB at 2000 Hz.  *Id*.  This places the average in the left ear around 90 dB.  As for bone conduction, in the right ear, testing could not be performed due to the degree of Plaintiff's hearing loss.  Tr. 358.  In the left

---

[1]2.00B2c directs that "[t]o determine whether your hearing loss meets the air and bone conduction criteria in 2.10A, we will average your air and bone conduction hearing thresholds at 500, 1000, and 2000 Hertz (Hz)."

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

ear, bone conduction was between 40 dB and 50 dB at 500 Hz, 40 dB at 1000 Hz, and 70 dB at 2000 Hz.  Tr. 357.  As for word recognition testing, due to the degree of Plaintiff's hearing loss, testing could not be performed in the right ear.  Tr. 358. In the left ear, Plaintiff could discriminate 88% of words at 105 dB HL.  Tr. 357.[2]

Air conduction, bone conduction, and word recognition tests are the tests used to establish Listing 2.10. The ALJ failed to discuss any of these test results in his decision when evaluating Plaintiff's eligibility under Listing 2.10, except for the inability to test Plaintiff's bone conduction on the right.  Tr. 20.  The ALJ's failure to address the evidence specific to a Listing is an error.  Additionally, the ALJ failed to address whether or not Plaintiff's impairments equaled Listing 2.10. Tr. 20.  Therefore, the case is remanded for the ALJ to reconsider whether or not Plaintiff meets or equals Listing 2.10.  Since it has been several years since Plaintiff's last hearing test, the ALJ is instructed to supplement the record with any outstanding hearing tests and if there are no outstanding hearing tests, the ALJ is instructed to send Plaintiff out for a consultative examination that includes air conduction, bone conduction, and word recognition testing.  The ALJ is instructed to review the new evidence in combination with the January 2010 testing to determine if at any point Plaintiff either met or equaled Listing 2.10.

**B.    Residual Functional Capacity**

Plaintiff challenges the ALJ's residual functional capacity determination, specifically that Plaintiff was capable of working in an environment with a moderate noise intensity level.  ECF No. 21 at 16-19.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404,

---

[2]*See* 1 David A. Morton, III, M.D., Social Security Disability Medical Tests 128-134 (1st ed. 2015) (the Court relied on this section to accurately read and transcribe the Pure Tone Audiometry conducted on January 19, 2010).

Subpart P, Appendix 2, § 200.00(c) (defining residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating a residual functional capacity determination, the ALJ weighs medical and other source opinions, considers the claimant's credibility, and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Here, the ALJ determined Plaintiff was capable of working in "a very quiet to moderate noise intensity level as those terms are defined in the Selected Characteristic of Occupations (SCO) in the Revised Dictionary of Occupational Titles."  Tr. 21.   The SCO provides illustrative examples of the various noise intensity levels:  the very quiet examples are "isolation booth for hearing test; deep sea diving; forest rail"; the quiet examples are "library; many private offices; funeral reception; golf course; art museum"; and the moderate examples are "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours."  Appendix D, Environmental Conditions, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES.

Plaintiff argues that he is limited from very quiet to quiet work environments and that the ALJ's determination that he could perform work in a moderate noise level intensity is not supported by substantial evidence.  ECF No. 21 at 16-19.  Plaintiff points to the six places in the record in which providers limit his noise intensity level.  *Id*. at 17-18.

Considering this case is being remanded for other reasons, including the weighing of medical source opinions, as addressed below, the ALJ is instructed to form a new residual functional capacity assessment including any of Plaintiff's limitations to noise intensity in the work environment and to explain why the residual functional capacity deviates, if at all, from the medical sources opinions in

the record.  *See* S.S.R. 96-8p.

**C.    Medical Source Statements**

Plaintiff challenges the weight given to the opinions of Mary Pellicer, M.D., Brent Packer, M.D., Erin See, ARNP, and Laurie Jones, MSW, LMHC.  ECF No. 21 at 20-25.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id*. at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Mary Pellicer, M.D.

Dr. Pellicer completed a consultative examination of Plaintiff on February 9, 2012. She reviewed medical records, interviewed Plaintiff, and performed a physical examination. Tr. 429-434. Based on this, Dr. Pellicer diagnosed Plaintiff with profound bilateral hearing loss with no useful hearing on the right and the ability to hear fairly well with a hearing aid in the left ear in a totally quiet environment, Pierre Roban complex of malformations with a repaired clef palate, chronic low back pain of uncertain etiology, and foot pain secondary to malformations. Tr. 433-434. Dr. Pellicer opined that Plaintiff was able to stand and walk for four to six hours in an eight-hour day with more frequent breaks due to chronic back and foot pain; able to sit for about six hours cumulatively in an eight-hour day with more frequent breaks due to chronic back pain; did not need assistance devices; would be capable of lifting and carrying less than ten pounds occasionally due to chronic back and foot pain; unable to bend, squat, crawl, kneel or climb due to chronic back pain; had no manipulative restrictions; was able to see, speak, and drive independently and do all necessary daily self-care activities; and was unable to hear in the right ear and his hearing was "significantly decreased on the left and he probably would not be able to hear adequately in anything but a very quiet environment, even with his hearing aid." Tr. 434.

The ALJ gave Dr. Pellicer's opinion "some weight," but rejected the "portion regarding the claimant's limited ability to stand and walk, lift less than 10 pounds, the need for frequent breaks, and the inability to bend, squat, crawl, kneel or climb." Tr. 25. The ALJ concluded that these restrictions were "inconsistent with the objective findings in [Dr. Pellicer's] report and in the longitudinal record.

The claimant had 5/5 strength when examined by Dr. Pellicer. His range of motion findings have been variable in the longitudinal record but typically are not severely limited." *Id*.

Dr. Pellicer's opinion was that Plaintiff's limitations in standing, walking, lifting, bending, squatting, crawling, kneeling, and climbing were due to pain, and not decreased strength or range of motion. Tr. 434. Therefore, the ALJ's notation of normal strength and range of motion testing is not inconsistent with the pain Dr. Pellicer based her opinion on. The ALJ's reasons do not meet the specific and legitimate standard.

On remand, the ALJ is instructed to readdress Dr. Pellicer's opinion.

## 2.   **Brent Packer, M.D.**, **Erin See, ARNP, and Laurie Jones, MSW, LMHC.**

Plaintiff also challenges the weight the ALJ gave to the opinions of Dr. Packer, Ms. See, and Ms. Jones. ECF No. 21 at 22-25. Considering the case is being remanded, the ALJ is instructed to readdress the weight given to all the medical source opinions in the record.

## D.   **Cross Examination of Vocational Expert**

Plaintiff challenges the ALJ's decision to terminate his representative's cross examination of the vocational expert at the hearing before he could complete his questioning. ECF No. 21 at 25-26.

A claimant in a disability hearing is entitled to "such cross-examination as may be required for a full and true disclosure of the facts." *Solis v. Schweiker*, 719 F.2d at 301, 302 (9th Cir. 1983), *citing* 5 U.S.C. § 556(d). "The ALJ has discretion to decide when cross-examination is warranted," yet a denial of the request to cross examine an expert, whose opinion is crucial to the ALJ's decision can be an abuse of discretion because such cross examination is "required for a full and true disclosure of the facts." *Solis*, 719 F.2d at 302.

Here, the ALJ did not allow Plaintiff's representative to continue his cross

examination of the vocational expert due to time.  Tr. 84-85.  Defendant argues that the ALJ acted within his discretion because Plaintiff's representative was asking about hypotheticals with limitations that were not supported by the record.  ECF No. 22 at 12.  The last two questions the representative asked were regarding the need to take additional breaks and an acceptable amount for an employee to be off task.  Tr. 84-85.  Dr. Pellicer's opinion cited the need for more frequent breaks due to pain.  Tr. 434.  Ms. Jones' opinion included a marked limitation in the ability to maintain attention and concentration for extended periods and sustain an ordinary routine without special supervision.  Tr. 462.  Ms. See's opinion included a need to lie down four to five times a day for 30 minutes at a time.  Tr. 465.  Therefore, the representative's questions were not without some basis in the record.  Additionally, Plaintiff was not given the opportunity to submit his final questions to the expert in the form of interrogatories.  Therefore, the ALJ abused his discretion in not allowing Plaintiff's representative an opportunity to complete his questioning of the vocational expert.

Considering the ALJ has been instructed to form a new residual functional capacity determination on remand, the ALJ is further instructed to elicit testimony from a vocational expert for any determination made at steps four and five on remand.

**E.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case.  ECF No. 21 at 26-28.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

Considering the case is being remanded for additional proceedings, the ALJ is instructed to reconsider Plaintiff's testimony on remand.

### REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determine if Plaintiff's impairments meet or equal Listing 2.10, to readdress the medical source opinions in the record, to determine Plaintiff's credibility, to make a new residual functional capacity determination, and to elicit testimony from a vocational expert. The ALJ will also need to supplement the record with any outstanding hearing tests, and if no recent tests are available, the ALJ is instructed to send Plaintiff out for a consultative examination that includes air conduction, bone conduction, and word recognition

testing. At any hearing on remand, the ALJ is instructed to elicit testimony from a medical expert as to whether or not Plaintiff's hearing impairments meet or equal a listing and, if they do not, to provide a narrative residual functional capacity opinion as to any limitations resulting from Plaintiff's hearing impairments.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED June 2, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15